### Gerard MORIN

v.

### E.M. LOEWS THEATRES, INC.

Supreme Judicial Court of Maine.

Argued Sept. 12, 1985.

Decided Oct. 4, 1985.

Lipman & Parks, P.A., Robert J. Stolt (orally), Barbara L. Raimondi, Sumner H. Lipman, Augusta, for plaintiff.

Hewes, Beals & Douglas, Richard D. Hewes (orally), Stephen C. Whiting, Bernstein, Shur, Sawyer & Nelson, William Willard, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Plaintiff Gerard Morin sued defendant E.M. Loews Theatres, Inc. (Loews) to recover damages for personal injuries he sustained when he was shot at the Loews drive-in theater in Manchester by Gordon Snell, a security guard at the theater. Plaintiff Morin bases his suit on the theory that Loews committed a breach of its duty of care toward theater patrons by hiring Snell as a security guard and by failing to supervise him properly. A jury trial in Superior Court (Kennebec County) resulted in a special verdict that Loews was not negligent and was not liable for the assault on Morin. Morin appeals the resulting judgment entered for Loews, alleging a number of erroneous evidentiary rulings. Finding no merit in those claims of error, we affirm the judgment of the Superior Court.

On May 25, 1980, while Morin and a female companion were sitting in his car at the Manchester drive-in theater waiting for traffic to clear after a movie, security guard Snell approached the Morin car. The parties are in sharp disagreement about what then happened. Morin and his companion testified at trial that the security guard ordered them to leave the theater, and then without provocation began to attack Morin with his nightstick. In self-defense, Morin fought back, and at that point the guard shot plaintiff. Loews, on the other hand, offered evidence to show that Morin was the aggressor and had beaten the security guard in the face with the nightstick, and that it was the guard who acted in self-defense. Both the guard and Morin were hospitalized for their injuries. Security guard Snell, a 70-year-old man, died before he could testify at trial or be deposed, and no other eyewitnesses to the fight other than Morin and his friend were called to the stand.

To help prove that Morin was the aggressor, Loews offered the testimony of Dr. Julius Ciembroniewicz, a neurosurgeon who had examined Snell after the drive-in theater incident. Dr. Ciembroniewicz testified that during his examination of the security guard, Snell told him that he, Snell, had received his facial injuries when he was attacked with a nightstick. Snell made that statement to Dr. Ciembroniewicz on June 6, 1980, twelve days after his confrontation with Morin, when he returned to the hospital emergency room because of his deteriorating medical condition. Dr. Ciembroniewicz diagnosed Snell as having a brain contusion. The presiding justice admitted Dr. Ciembroniewicz's testimony in evidence, ruling that it fell within the "medical diagnosis" exception to the hearsay rule in M.R.Evid. 803(4), which reads:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reason-

ably pertinent to diagnosis or treatment [are not excluded by the hearsay rule]. Morin argues that Snell's statement does not come within Rule 803(4) because it was made too long after the infliction of Snell's injuries. We reject this argument.

██ Unlike the "present sense impression" exception of M.R.Evid. 803(1) and the "excited utterance" exception of M.R.Evid. 803(2), Rule 803(4) lays down no requirement that the declarant's statement be made in immediate time proximity to the events of which declarant was speaking. Rule 803(4) requires only that such statements be "made for purposes of medical diagnosis or treatment." M.R.Evid. 803(4). The mere fact that Snell made his statement twelve days after sustaining his injury does not detract from its medical purpose. Dr. Ciembroniewicz examined Snell in order to make a medical diagnosis, and Snell's statement was clearly pertinent thereto. Contrary to plaintiff's contention, the admission of Snell's statement is not contrary to the rationale behind the hearsay exception defined by 803(4), namely, the strong motivation for the declarant to be truthful. *See* M.R. Evid. 803(4) advisers' note, *reprinted in* Field & Murray, *Maine Evidence* 203 (1976). Although Snell may have been aware that civil proceedings might be instituted in the future, that awareness does not take away the inherently trustworthy nature of statements made by a patient to aid his own physician in making the correct medical diagnosis or in prescribing the correct treatment. *See State v. Hebert*, 480 A.2d 742, 748–49 (Me.1984).

██ Plaintiff's other contentions on appeal are quickly answered. The justice properly excluded the testimony of Dr. Brian Rhines, a psychologist produced by plaintiff to give his expert opinion that Snell had a propensity for violence. Plaintiff at no time contradicted Loews' characterization of the proffered testimony as evidence of a trait of Snell's character that plaintiff was offering in order to prove that Snell acted in conformity therewith in his

confrontation with Morin. Such character evidence is explicitly declared inadmissible by M.R.Evid. 404(a).

Plaintiff also offered the testimony of Robert Williams and Roy Gutfinski as evidence of prior similar incidents involving Snell at the theater. The presiding justice properly excluded that testimony because it did not involve incidents of sufficient similarity to the Snell-Morin confrontation. The justice also grounded his exclusion of the Williams and Gutfinski testimony on M.R.Evid. 403. In applying the balancing test of Rule 403, the trial judge is allowed a broad range of discretion. *State v. Goyette,* 407 A.2d 1104, 1109 (Me.1979).

Finally, the presiding justice did not err in limiting plaintiff's cross-examination of Dr. Tiche Shelton, Snell's family doctor, to exclude questions about his treatment of Snell for mental difficulties at times in the past. Under Rule 403 it was well within the range of the justice's discretion to exclude testimony that was not closely related to Snell's mental condition on the night of May 25, 1980.

The entry is:

Judgment affirmed.

All concurring.